Day, C. J.
The question in the case is, whether county commissioners are authorized by law to rebuild a bridge costing over $10,000, without first obtaining the consent of a majority of the electors of the county. The determination of the question depends upon the construction to be given to sections 2 and 3 of an act passed May 1, 1871 (68 Ohio L. 117), as amended April 26,1872 (69 Ohio L. 113), “ prescribing the rate of taxation for county, bridge, road, and township purposes.”
These sections of the act, so far as material, are as follows : The second section, as passed in 1871, authorizes county commissioners to levy annually a tax for road and bridge purposes, and to set apart such portion of the road tax as they may deem proper “to be applied to the building or repairing of bridges in their respective counties.” The •section contains the following additional provision: “ Provided, that in case an important bridge or bridgeSj belonging to or maintained by any county, shall be destroyed by any casualty, and the restoration thereof may be necessary for public accommodation, the- commissioners of said county may levy a special tax for that purpose, not exceeding one-half mill on the dollar of the taxable property of such county, the proceeds of which tax shall be applied solely to the restoration of such bridge or bridges.”
The third section provides that the “ county commissioners of any such county shall not levy any tax, or appropriate any money for the purpose of building public county buildings, purchasing sites therefor, or for lands for infirmary purposes, or for building any bridges, except in case <f casualty, as provided for in section 2, the expense of *500 which shall exceed ten thousand dollars, without first submitting to the qualified electors of said county the question» as to the policy of building any public county building or buildings, or for purchasing sites therefor, or for the purcnase of lands for infirmary purposes by general tax, which said submission shall be made at the annual fall election in October, a. d. 1871, or any annual fall election thereafter.”
The second section of the act was amended in 1872. The clause relating to destroyed and decayed bridges is as follows: “ Provided, that in case an important bridge-belonging to or maintained by any county, has been, or hereafter may be destroyed by any casualty, or has become or may hereafter become dangerous to public travel, by decay or otherwise, and the restoration thereof may be necessary for the public accommodation, the commissioners of such-county may levy a special tax for that purpose, not exceeding one and one-half mills on the dollar of the taxable» property of such county, the proceeds of which tax shall be applied solely to the restoration of such bridge or bridges.”
The third section was not amended, but was left as it was enacted the year before.
The only change made by the amendment of the second, section, was the addition of another cause or ground for the levy of a special tax, and the increase of the rate of' the tax for bridge purposes.
It will be observed that the limitation of the general power of commissioners to build and repair bridges, in the third section, does not extend to the repair of bridges nor does it apply where an important bridge has been destroyed by casualty,' and its restoration is necessary for the. public convenience.
It- is also noticeable that when a second ground for a special‘bridge tax was added to the second section, the. third was left unchanged, so that the question of the construction of the two sections is the same as it would have-been if both had been originally enacted as they now stand. The only question of statutory construction, then, is,. *501 ■whether the exception to the limitation in the third section ■extends to the restoration of decayed bridges, as well as to those destroyed by casualty. The language of the section ■only embraces the latter class. If it can be made to include the other class, it can be done only by a doubtful •construction, that ought not to be applied to an exemption •from an express limitation upon the exercise of the taxing power for a specified purpose. The power of special taxation for bridge purposes, conferred in the second section, may be exercised in two classes of cases, and but one of •these classes is mentioned in the exception from the limitation of the third section. When the legislature added a second ground for special taxation, and increased the rate, they left the new cause for a special levy subject to the limitation of the third section. What the legislature has failed to do expressly, in a case like*this, we ought not to do constructively. The' exemption of one class and not the other, is not without reason. As before remarked, the limitation of the third section does not apply to the repair of bridges, 'but applies only to their construction. The public convenience might require the restoration of a bridge suddenly destroyed by casualty, without awaiting a popular vote, though it might cost more than $10,000; while the rebuilding, not repair, of a decaying bridge may be reasonably •anticipated in time to comply with the provisions of the .third section.
It only l’emains to be considered whether the structure contemplated in this case, was the building of a bridge within the meaning of the third section. We think it was. It was to cost more than $10,000 ; and not coming within •the exception, it was included in the general inhibition of ■the section. It was in no fair sense the repair of a bridge. It was to be a new structure, whether it he called the build- : lg, rebuilding, or restoration of a bridge. The proposed new bridge, then, not being the repair of a bridge, nor excepted from the limitation of the third section, costing •more than $10,000, falls within its provisions. The cost of .the proposed bridge was estimated at about $40,000. This *502 expenditure the commissioners were about to make, in-building a bridge contrary to the provisions of the statute. The popular controversy on the subject made the ease one peculiarly within the reason of the statute, requiring the question to be submitted to the vote of the .electors of the county. Having failed to do this, the District Court did not err in restraining the commissioners from making the-expenditure in violation of law.

Judgment affirmed.

McIlvaine and Rex, JJ., concurring. ‘Welch, J., not. sitting.